## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

ELIZABETH SCHULTZ, *et al.*;  §
       *Plaintiffs* §
                §
                §       SA-21-CV-01043-XR
-vs-                §
                §
LINDSEY ERCOLE, *et al.*,  §
       *Defendants* §
                §

## <u>ORDER</u>

On this date, the Court considered Defendants Ercole, Mangold, and Hernandez's motion to strike Plaintiffs' second amended complaint (ECF No. 30), Defendants' motions to dismiss (ECF Nos. 23, 25) and Defendants' motions to stay discovery (ECF Nos. 31, 32). After careful consideration, the Court issues the following order.

## BACKGROUND

### I.    Facts

This is a § 1983 case stemming from Defendants' decision to refer Plaintiffs Elizabeth and Michael Schultz to Child Protective Services ("CPS") for investigation and to hold their minor daughter, A.L.P., at University Hospital after Elizabeth Schultz attempted to leave with A.L.P. Defendants Drs. Ercole and Hernandez treated A.L.P. at University Hospital. ECF No. 29 at 7–9. Defendant University of Texas Health Science Center ("UTHSC") employed Drs. Ercole, Hernandez, and Mangold at the time of A.L.P.'s treatment. *Id.* at 2–3.

On October 6, 2019, A.L.P. experienced a major neurological episode. *Id.* at 4. The next day, Elizabeth took A.L.P. to the emergency room at North Central Baptist Hospital as A.L.P. was blacking out, having panic attacks, hallucinating, was unable to control her emotions or

bladder, and suffering pain throughout her body. *Id.* at 4–5. Once she was stabilized, A.L.P. was discharged from the hospital that same evening. *Id.* at 5.

On October 8, 2019, Elizabeth took A.L.P. to Clarity Child Guidance Center, where A.L.P. was admitted as an inpatient for four days. *Id.* When A.L.P. was discharged, medical staff told Elizabeth that A.L.P. had experienced an acute anxiety attack. *Id.*

On October 16, 2019, Elizabeth took A.L.P. to Mindworks Counseling of Texas as A.L.P. was still suffering from her symptoms and experiencing headaches and severe fatigue. *Id.* Elizabeth was instructed to take A.L.P. to the emergency room due to facial paralysis and auditory hallucinations. *Id.* Elizabeth and A.L.P. returned to North Central Baptist Hospital. *Id.* On October 18, A.L.P. was discharged. *Id.* The medical records upon discharge note that it was possible that A.L.P. had Pediatric Autoimmune Neuropsychiatric Disorders Associated with Streptococcal Infections ("PANDAS"), but that the "most likely cause" of her symptoms was "behavioral/psychiatric in nature." Exh. C at 1.

On October 19, 2019, Elizabeth brought A.L.P. to the emergency room at University Hospital due to worsening symptoms. ECF No. 29 at 5. A.L.P. could no longer recall her own name or who her mother was. *Id.* at 6. She received a three-day treatment course of high-dose steroids known as IVIG infusion. *Id.* On October 24, she was discharged after her symptoms improved. *Id.*

On October 25, 2019, Elizabeth returned with A.L.P. to University Hospital because A.L.P.'s behavior had worsened, and A.L.P. could not control her anger. *Id.* Elizabeth requested that A.L.P. receive the IVIG infusion again as it had previously improved A.L.P.'s symptoms. *Id.* Elizabeth then "became frustrated and exasperated because no one would listen to her and no one could figure out what was wrong with her daughter." *Id.* She also "attempted to provide

2

information on several illnesses or disorders that could be causing A.L.P.'s symptoms to the triage staff." *Id.* Medical staff noted that Elizabeth, in her distress, seemed "manic or hypomanic with psychotic features." *Id.* The staff made a note to consult a social worker for possible CPS referral. *Id.* The same day, Dr. Suzanna Gazda, a neurologist who had not personally examined A.L.P., diagnosed A.L.P. with Pediatric Autoimmune Neuropsychiatric Disorder ("PANS"). *Id.* at 7; *see also* Exh. K.

On October 26, 2019, Defendant Dr. Rebecca Hernandez indicated that there was a concern for a "potential traumatic event which could have triggered symptoms." ECF No. 29 at 7. Dr. Lindsey Ercole noted an additional concern for A.L.P.'s safety, as Elizabeth had given A.L.P. Ativan when it was not prescribed to her. Exh. H. The social worker "felt there was significant risk of A.L.P. returning to her home without CPS evaluation due to mother's behavior." ECF No. 29 at 8. That afternoon, Elizabeth attempted to speak with Dr. Ercole to get more information regarding the PANS diagnosis. *Id.* Dr. Ercole, though, refused to speak with Elizabeth. *Id.* Elizabeth subsequently had an altercation with nurses regarding A.L.P.'s care. *Id.* Dr. Ercole then arrived and spoke with Elizabeth, apologized for her earlier behavior, and told Elizabeth that a social worker had made a referral to CPS. *Id.* at 8–9.

Later that same evening, Elizabeth found undated and unsigned "chart notes" from the doctors' rounds earlier in the day. *Id.* at 9; Exh. I. The notes indicated that A.L.P. was to be "discharged today." ECF No. 29 at 9. Elizabeth informed the nurses that she was taking A.L.P. home, but the nurses and Dr. Ercole prevented Elizabeth from leaving with A.L.P. and threatened her with further CPS involvement if she left. *Id.*

On October 29, 2019, A.L.P. was discharged from University Hospital. *Id.* When Elizabeth and A.L.P. returned to their home, CPS was present and wanted to speak with

Elizabeth about the referral made by Drs. Ercole and Hernandez. *Id.* CPS began a month-long investigation into the allegations of abuse and medical neglect. *Id.* at 9–10. On December 2, 2019, CPS concluded that there was no validity to the allegations. *Id.* at 10; Exh. J.

Plaintiffs assert that assert that Defendants' actions violated their fundamental right to family integrity, that Defendants were deliberately indifferent to A.L.P.'s serious medical needs, that Defendants unlawfully seized A.L.P., and that Defendants' actions subjected them to malicious prosecution. Plaintiffs further bring a state law tort claim of intentional infliction of emotional distress ("IIED").

## II.    Procedural History

Plaintiffs filed their original complaint on October 26, 2021, against Drs. Ercole, Mangold, and Hernandez, as well as University Health System ("UHS"). ECF No. 1. In response, Defendants Ercole, Mangold, and Hernandez filed a motion to dismiss on November 23, 2021. ECF No. 13. Plaintiffs subsequently filed an amended complaint, adding Defendant University of Texas Health Science Center ("UTHSC"). ECF No. 14. Defendants Ercole, Mangold, and Hernandez then filed an amended motion to dismiss. ECF No. 23. Defendant UTHSC also filed a motion to dismiss. ECF No. 25. Plaintiffs then voluntarily dismissed their claims against UHS and, without seeking leave of court or written consent of the opposing parties, filed a second amended complaint. ECF Nos. 28, 29.

## DISCUSSION

## I.    Motion to Strike

Defendants argue that Plaintiffs' second amended complaint should be stricken for Plaintiffs' failure to comply with Federal Rule of Civil Procedure 15. Under Rule 15: "A party may amend its pleading once as a matter of course . . . . In all other cases, a party may amend its

pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(1)–(2). The court "should freely give leave when justice so requires." *Id.* "[F]ailure to obtain leave results in an amended complaint having no legal effect." *United States ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003). "However, some courts have held that an untimely amended pleading served without judicial permission may be considered as properly introduced when leave to amend would have been granted had it been sought and when it does not appear that any of the parties will be prejudiced by allowing the change." *Id.* at 295 (quoting 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1484 (3d ed. 1990)).

Plaintiffs did not seek leave of court or Defendants' written consent prior to filing their second amended complaint. Plaintiffs argue that they are permitted under Rule 15(a)(1) to file their second amended complaint "as one to which a responsive pleading is required" in response to the pending motions to dismiss. ECF No. 36 at 3. However, this interpretation of Rule 15 is misguided. Rule 15(a)(1) provides a single opportunity to amend "once as a matter of course." *See Mathews*, 332 F.3d at 295; 6 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1480 (3d ed. 1990) (if "the party already has amended the pleading, [Rule 15(a)(1)] no longer applies and an amendment falls under Rule 15(a)(2), which requires leave of court or the written consent of the opposing party."). Thus, Plaintiffs were required to follow Rule 15(a)(2) and seek leave of court or consent of the opposing parties before filing their second amended complaint.

Nonetheless, the Court finds that leave to amend is proper in this case. "Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *United States ex rel. Willard v. Humana Health Plan of*

5

*Tex., Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Consequently, leave to amend should not be denied unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . ." *Foman*, 371 U.S. at 182.

Defendants argue that allowing the second amended complaint to move forward will prejudice them. Specifically, Defendants contend that this "suit will be unduly delayed if the amendment is allowed because [movants] would have to re-file their Motion to Dismiss and Motion for Judgment on the Pleadings." ECF No. 30 at 3. However, the second amended complaint merely removes previous references in the first amended complaint to former-Defendant UHS, as Drs. Ercole, Hernandez, and Mangold were employed by Defendant UTHSC. *Compare* ECF No. 14 *with* ECF No. 29. Plaintiffs' substantive allegations are largely unchanged. "[A] motion to dismiss that attacks the original complaint for deficiencies that persist in the amended complaint should not necessarily always be denied as moot. Rather, the court has the discretion to apply the original motion to dismiss to the amended complaint." *New World Int'l, Inc. v. Ford Global Tech., LLC*, No. 3:16-CV-1112-M, 2017 WL 1078525 at *5 (N.D. Tex. March 22, 2017); *see also* 6 Charles Alan Wright, et al., Federal Practice & Procedure § 1476 (3d ed. 1990) ("If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading."). As there is little meaningful difference between the first and second amended complaints, the Court will rule on Defendants pending motions to dismiss in light of the second amended complaint as to avoid any prejudice to Defendants in accepting the second amended complaint.

Therefore, Defendants' motion to strike (ECF No. 30) is **DENIED**. The Court will now turn to the pending motions to dismiss for lack of subject matter jurisdiction and failure to state a claim (ECF Nos. 23, 35).

## II.     Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendant UTHSC brings a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction arguing that, as an arm of the state, it is entitled to Eleventh Amendment immunity. ECF No. 25. Further, the Court addresses minors H.S. and P.S.'s standing.

### a.   Legal Standard

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus.*, 797 F.3d 309, 312 (5th Cir. 2015) (quoting *Home Builders Ass'n of Miss., Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "The party claiming federal subject matter jurisdiction has the burden of proving it exists." *Peoples Nat. Bank v. Office of Comptroller of Currency*, 362 F.3d 333, 336 (5th Cir. 2004). "A court may base its disposition of a motion to dismiss for lack of subject matter jurisdiction on (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Robinson v. TCI/US W. Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997).

### b.   Analysis

#### i.   Defendant UTHSC is entitled to Eleventh Amendment immunity.

Defendant UTHSC contends that this Court lacks subject matter jurisdiction because it is an arm of the state entitled to Eleventh Amendment immunity. ECF No. 25 at 4. "For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was

not contemplated by the Constitution when establishing the judicial power of the United States.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "While Eleventh Amendment immunity 'partakes of the nature of a jurisdictional bar,' unlike any other issue of federal subject matter jurisdiction, it can be waived by the state." *Watson v. Texas*, 261 F.3d 436, 440 (5th Cir. 2001) (quoting *Edelman v. Jordan*, 415 U.S. 651, 677–78 (1984)). Congress may also abrogate a state's sovereign immunity. *See Seminole Tribe*, 517 U.S. at 59–60; *Bd. of Trustees of Univ. of Al. v. Garrett*, 531 U.S. 356, 363 (2001). For litigants to recover money damages from a state entity, they must show a valid waiver of sovereign immunity. *See Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253 (5th Cir. 2020).

Plaintiffs argue that UTHSC is not entitled to Eleventh Amendment immunity and submit that they were unable to find case law expressly holding that UTHSC is an arm of the state. ECF No. 35 at 4. But several courts, including the Fifth Circuit, have concluded that UTHSC is an arm of the state entitled to Eleventh Amendment immunity. *See, e.g.*, *Sullivan v. Univ. of Tex. Health Science Ctr. at Hous. Dental Branch*, 217 F. App'x 391, 392 (5th Cir. 2007) (per curiam) ("It is undisputed that UTHSC, as an arm of the state, is entitled to Eleventh Amendment immunity absent Congressional abrogation or voluntary waiver."); *Woodall v. Univ. of Tex. Sys.*, No. SA-09-CA-0525-FB, 2010 WL 11601282, at *4 (W.D. Tex. March 30, 2010) ("As arms of the states, it is undisputed the University of Texas System and the University of Texas Health Science Center at San Antonio are entitled to Eleventh Amendment immunity . . . ."); *Trevino-Garcia v. Univ. of Tex. Health Science Ctr. Sch. of Med.*, No. SA-09-CA-0572-XR, 2009 WL 3464865, at *2 (W.D. Tex. Oct. 19, 2009) ("It is undisputed that UTHSC, as an arm of the state, is entitled to Eleventh Amendment immunity . . . ."); *Butcher v. Univ. of Tex. Health Science*

*Ctr. of Hous.*, No. H-08-CV-0244, 2008 WL 4935723, at *2 (S.D. Tex. Nov. 18, 2008) ("The Fifth Circuit has consistently found that the University of Texas, and its health institutions, are protected by sovereign immunity."). This Court concludes the same; thus, absent a waiver from the state or Congress, Defendant UTHSC is immune from suit.

Having concluded that UTHSC is an arm of the state, Plaintiffs have the burden to plead a valid waiver of Eleventh Amendment immunity. Plaintiffs have failed to do so. Plaintiffs assert several constitutional claims pursuant to 42 U.S.C. § 1983 in their second amended complaint, specifically that UTHSC interfered in Elizabeth and Michael Schultz's constitutional right to make medical decisions on behalf of A.L.P.; that UTHSC was deliberately indifferent to A.L.P.'s serious medical needs; that UTHSC unlawfully seized A.L.P.; and that UTHSC subjected Plaintiffs to malicious prosecution. ECF No. 29 at 12–22. However, UTHSC is not amenable to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that states may not be held liable under § 1983); *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013) (stating that a plaintiff's § 1983 claim is barred if the defendant is an arm of the state). Therefore, Plaintiffs' § 1983 claims against UTHSC are barred under the Eleventh Amendment.

Plaintiffs further assert an IIED claim against UTHSC. ECF No. 29 at 22–23. Texas has enacted a limited statutory waiver of its and its political subdivision's sovereign immunity through the Texas Tort Claims Act ("TTCA"). TEX. CIV. PRAC. & REM. CODE § 101.001 *et seq.* However, the TTCA does not waive Eleventh Amendment immunity in federal court. *Sherwinski v. Peterson*, 98 F.3d 849, 851–52 (5th Cir. 1996); *Ripley v. Univ. of Tex. Health Science Ctr. at San Antonio*, 400 F. Supp. 2d 933, 938 (W.D. Tex. 2005). The TTCA provides: "A suit under this chapter shall be brought in state court in the county in which the cause of action or a part of the cause of action arises." TEX. CIV. PRAC. & REM. CODE § 101.102(a). "A state does not waive

Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts." *Sherwinski*, 98 F.3d at 851–52. Plaintiffs originally brought this lawsuit in this Court, not state court. Thus, Plaintiffs' IIED claim is also barred by Eleventh Amendment immunity.

### ii.   Minors H.S. and P.S. lack standing.

"[B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). "[F]ederal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction *sua sponte* if not raised by the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001). Standing requires that the plaintiff have suffered an "injury in fact" that is "fairly traceable" to the defendant's conduct and that can be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

Presumably, H.S. and P.S. are Elizabeth and Michael Schultz's children and A.L.P.'s siblings. However, Plaintiffs do not expressly plead this. In fact, Plaintiffs allege no facts concerning what injuries H.S. and P.S. suffered as a result of Defendants' conduct. The only times H.S. and P.S. are referenced in the second amended complaint is in the description of the parties and in the prayer for relief. *See* ECF No. 29 at 1–2, 25. As there are no alleged facts regarding H.S. and P.S.'s injuries, the Court concludes they do not have standing.

For these reasons, Defendant UTHSC's 12(b)(1) motion to dismiss (ECF No. 25) is **GRANTED**.[1] Plaintiffs' claims against Defendant UTHSC are **DISMISSED WITHOUT PREJUDICE**.

Plaintiffs' claims against Drs. Hernandez, Ercole, and Mangold in their official capacity are duplicative of their claims against UTHSC. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, these claims are also **DISMISSED WITHOUT PREJUDICE**.

Lastly, Plaintiffs H.S. and P.S.'s claims against Drs. Hernandez, Ercole, and Mangold in their individual capacity are **DISMISSED WITHOUT PREJUDICE**.

### III.    Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendants Drs. Ercole, Mangold, and Hernandez, in their individual capacities, move to dismiss Plaintiffs' claims for failure to state a claim under Rule 12(b)(6).

#### a.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for

---

[1]      Because the Court lacks jurisdiction over the claims asserted against UTHSC, it declines to consider UTHSC's motion to dismiss under Rule 12(b)(6). *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (when a party moves for dismissal for lack of subject matter jurisdiction and failure to state a claim and the court finds it lacks subject matter jurisdiction, "the court should dismiss only on the jurisdictional ground under Fed.R.Civ.P. 12(b)(1), without reaching the question of failure to state a claim under Fed.R.Civ.P. 12(b)(6).").

the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery.") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

When a plaintiff attaches an exhibit to her complaint, it "is a part of the pleading for all purposes." FED. R. CIV. P. 10(c); *see also United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 375 (5th Cir. 2004) ("[I]t is not error to consider the exhibits to be part of the complaint for purposes for a Rule 12(b)(6) motion."). When an "allegation is contradicted by

the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Riley*, 355 F.3d at 377.

### b. Qualified Immunity

Defendants invoke the defense of qualified immunity. ECF No. 23. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Allegations against defendants who enjoy qualified immunity must overcome that protection, which 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Romero v. Brown*, 937 F.3d 514, 519 (5th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). In evaluating the qualified immunity defense, courts determine "whether (1) 'the facts alleged show the officer's conduct violated a constitutional right'; and [(2)], 'whether the right was clearly established.'" *Keller v. Flemming*, 952 F.3d 216, 221 (5th Cir. 2020) (quoting *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017)) (alteration in original). Courts may "analyze the prongs in either order or resolve the case on a single prong." *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020) (quoting *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020)).

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 577 U.S. at 11 (quoting *Reichle v. Howards*, 66 U.S. 658, 664 (2012)). "A case 'directly on point' is not required, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Cunningham*, 983 F.3d at 191 (quoting *al-Kidd*, 563 U.S. at 741). "The 'clearly established' prong is difficult to satisfy." *Id.*

### c.  Analysis

Plaintiffs bring several claims against Defendants Drs. Ercole, Hernandez and Mangold. First, Plaintiffs allege that Defendants violated their constitutional right to the care, custody, and control of A.L.P. by creating "a medical record of an unfounded medical diagnosis of parental abuse and neglect . . . contrary to all previous medical diagnosis." ECF No. 29 at 14. Plaintiffs further allege that Defendants were deliberately indifferent to A.L.P.'s serious medical needs, unreasonably seized A.L.P., and subjected them to malicious prosecution. *Id.* at 18–20. Lastly, Plaintiffs assert an IIED claim against Defendants. *Id.* at 22–24.

"To state a claim under 42 U.S.C. § 1983, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2008) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).

### i.  Plaintiffs have failed to allege facts that Dr. Mangold was personally involved in the events giving rise to their claims.

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 809 F.2d 381, 382 (5th Cir. 1983). Absent personal involvement, supervisory liability can only be established if the claimant demonstrates a sufficient causal connection between the supervisor's conduct and the alleged constitutional violation. *Fergason v. Smith*, 189 F.3d 468, 468 (5th Cir. 1999) (per curiam).

Plaintiffs allege no facts that Dr. Mangold was personally involved in A.L.P.'s treatment or the decision to contact a social worker or CPS. The second amended complaint is replete with conclusory references to Dr. Mangold, including that she (1) made an "unwarranted" claim of abuse that affected Plaintiffs' care, custody, and control of A.L.P.; (2) imprisoned Plaintiffs at

14

University Hospital; (3) inflicted emotional distress on Plaintiffs; (4) "maliciously initiated adverse legal processes" against Plaintiffs. ECF No. 29 12–24. However, Plaintiff does not allege any specific facts as to what Dr. Mangold did or did not do throughout A.L.P.'s second admission to University Hospital or what her role was in A.L.P.'s care. Plaintiffs' claims against Dr. Mangold, therefore, must be dismissed.

> ### ii. Drs. Hernandez and Ercole are entitled to qualified immunity as to Plaintiffs' substantive due process claim.

Plaintiffs allege that Defendants violated their substantive due process right to the care, custody, and control of A.L.P. by (1) choosing to "disregard a previous diagnosis" of A.L.P., (2) creating "a medical record of an unfounded medical diagnosis of parental abuse and neglect," (3) making "false allegations against Plaintiffs" to CPS, (4) "forcing the [Plaintiffs] to stay confined to University Hospital's premises until such time as they were released on October 29, 2019," and (5) subjecting Plaintiffs to an "invasive" investigation. ECF No. 29 at 14–15.

"That the Constitution protects family relationships and a parent's right to the care, custody, control, and management of their children is well-established." *Wooley v. City of Baton Rouge*, 211 F.3d 913, 920–21 (5th Cir. 2000). "Because a parent's custody and control of her children is a fundamental liberty interest, the government may violate substantive due process when it takes away that right." *Romero*, 937 F.3d at 519 (citing *Moore v. City of East Cleveland*, 431 U.S. 494, 498–500 (1977)). However, "[t]he right to family integrity must be balanced against the state's interest in protecting the health, safety, and welfare of children." *Wooley*, 211 F.3d at 924. "Cases claiming governmental interference with the right of family integrity are properly analyzed by placing them, on a case by case basis, along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy." *Morris v. Dearborne*, 181 F.3d 657, 671 (5th Cir. 1999). "If the facts of the case 'place it in the center of

the continuum,' meaning the state's and family's interests overlap, the right to family integrity is considered too 'nebulous' to find a clearly established violation." *Romero*, 937 F.3d at 519 (quoting *Morris*, 181 F.3d at 671).

Whether Plaintiffs have alleged a clearly established violation of the substantive due process right to family integrity is assessed by determining if the state's interest in preventing child abuse and Plaintiffs' privacy interests overlapped. Here, it is clear that the state and family's interests overlapped, and "the right to family integrity may properly be characterized as nebulous . . . ." *Morris*, 181 F.3d at 671. The UHS records attached to Plaintiffs' second amended complaint detail Drs. Hernandez and Ercole's worries. Dr. Hernandez indicated in her October 26 notes that she was concerned "a potential traumatic event" may have triggered A.L.P.'s symptoms. ECF No. 29 at 7; Exh. G at 3. Furthermore, Drs. Hernandez and Ercole were concerned that Elizabeth gave A.L.P. Ativan, a scheduled medication, when it was not prescribed to her. Exh. F at 3; Exh. H at 1. It had also been brought to their attention that Elizabeth's behavior had troubled medical staff. Exh. F at 2; Exh. K at 5. Based on their observations, Drs. Hernandez and Ercole contacted a hospital social worker and CPS.

Plaintiffs argue that Drs. Hernandez and Ercole's stated concerns, though, were "baseless" and "unwarranted" because "a cursory view of the records from A.L.P.'s previous hospital stay at University Hospital would have provided a reasonable diagnosis for A.L.P.'s conditions," specifically, PANS/PANDAS.  ECF No. 29 at 11, 14. Thus, Plaintiffs contend, Drs. Hernandez and Ercole ignored a PANS/PANDAS diagnosis to create a false medical record of abuse. *Id.* at 14. But Plaintiffs do not allege that A.L.P. had in fact been diagnosed with PANS/PANDAS before Drs. Hernandez and Ercole began treating her. Plaintiffs merely allege that, upon discharge from Northern Baptist, "[t]he *possibility* of PANDAS was raised which may

16

explain her presentation in part;" however, medical staff also note that "the most likely cause [of A.L.P.'s symptoms] is behavioral/psychiatric in nature." Exh. C at 1 (emphasis added). Indeed, during A.L.P.'s first admission to University Hospital, doctors noted several conditions could be causing A.L.P.'s symptoms, including PANDAS, PANS, a stress or adjustment disorder in response to an unknown event, autoimmune encephalitis, or conversion disorder. Exh. D at 2. When A.L.P. returned to University Hospital and entered Drs. Hernandez and Ercole's care, no PANS/PANDAS diagnosis had been established. Though Dr. Hernandez spoke with Dr. Gazda, a neurologist who allegedly diagnosed A.L.P. with PANS on October 25, 2019, the day A.L.P. was admitted, Dr. Gazda had "not actually examined" A.L.P. and was unaware of the testing doctors had performed. Exh. K at 10. Even so, Dr. Hernandez consulted literature on treating PANS/PANDAS patients, and subsequently elected to proceed with further IVIG steroid treatment. *Id.* Based on the facts alleged, there was no previous diagnosis for Drs. Hernandez and Ercole to ignore, and the possibility of a PANS/PANDAS diagnosis was never overlooked. Instead, the facts alleged in combination with the exhibits attached to the second amended complaint suggest that the uncertainty surrounding the cause of A.L.P.'s symptoms prompted medical professionals to explore every possible explanation, including trauma or abuse, which led to CPS involvement. Consequently, the state had an interest in investigating possible child abuse that overlapped with Plaintiffs' privacy interests.

Furthermore, "[f]oundational family integrity cases 'involve[] the state's attempt to sever *permanently* the parent-child relationship.'" *Romero*, 937 F.3d at 521 (quoting *Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988)) (emphasis in original). In cases where a child has been removed from a parent's custody, the Fifth Circuit has found clear violations of the right to family integrity only "when the removal measured in months or years." *Id.* (citing *Wooley*, 211

17

F.3d at 918; *Morris*, 181 F.3d at 671). Here, A.L.P. was not permitted to leave University Hospital until CPS cleared her to return home—merely three days after Elizabeth initially tried to leave the hospital with her. A.L.P. was never separated from her parents, and her parents remained at her bedside until she was permitted to leave. The interference in Plaintiffs' right to the care, custody, and control of A.L.P. in this case "is a much less substantial interference" than one that would qualify as a violation of clearly established law. *See id.* (finding that a temporary interference with child custody, lasting only one day, did not constitute a violation of clearly established law); *Hodorowski*, 844 F.2d at 1217 (finding a four-day removal of children from their father's home, without a court order, did not constitute a violation of clearly established law). Thus, Drs. Ercole and Hernandez are entitled to qualified immunity as to Plaintiffs' substantive due process claim, and Plaintiffs' claim must be dismissed.

### iii. Plaintiffs fail to allege that Drs. Hernandez and Ercole were deliberately indifferent to A.L.P.'s serious medical needs.

Plaintiffs next allege that Defendants Drs. Hernandez and Ercole were deliberately indifferent to A.L.P.'s serious medical needs. ECF No. 29 at 18. Specifically, Plaintiffs argue that Drs. Hernandez and Ercole's disregard of Dr. Gazda's PANS/PANDAS diagnosis, making a "baseless" report to CPS, and holding A.L.P. for three days after the determined date of discharge constitute deliberate indifference. *Id.* at 18–20; ECF No. 35 at 8.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a [patient's] disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 399, 346 (5th Cir. 2006). "Rather, the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in

any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

The facts alleged in Plaintiffs' second amended complaint do not rise to the level of deliberate indifference. As discussed, Drs. Hernandez and Ercole did not disregard a previous PANS/PANDAS diagnosis because such a diagnosis did not exist. While Dr. Gazda opined that A.L.P. was suffering from PANS, she had not examined A.L.P. or performed any diagnostic testing, nor was she aware of any diagnostic testing that had been performed. Exh. K at 10. Nonetheless, Dr. Hernandez listened to Dr. Gazda's concerns and conducted extensive research on PANS/PANDAS in treating A.L.P. *Id.* Because the cause of A.L.P.'s symptoms were unclear and Elizabeth's behavior troubled medical staff, Drs. Hernandez and Ercole contacted a social worker to rule out trauma or abuse. Far from indifference, the facts alleged show that Drs. Hernandez and Ercole were concerned for A.L.P.'s wellbeing. Therefore, Plaintiffs have failed to adequately allege a constitutional violation. Drs. Hernandez and Ercole are consequently entitled to qualified immunity, and this claim must be dismissed.

### iv. Drs. Ercole and Hernandez are entitled to qualified immunity as to Plaintiffs' Fourth Amendment claim.

Plaintiffs further allege that "Defendants' actions constituted false imprisonment in that said actions constituted an unreasonable restraint, by state actors acting under color of law, of Plaintiffs' individual liberties, against Plaintiffs' will, and without probable cause." ECF No. 29 at 23. As Plaintiffs assert that this action is brought pursuant to § 1983, the Court will interpret the claim as one of unlawful seizure of A.L.P.'s person in violation of the Fourth Amendment. *See* ECF No. 27 at 10.

In analyzing this claim, the Court will exercise its "sound discretion" and only analyze the second prong of the qualified immunity analysis: whether the right at issue was clearly established at the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding courts may resolve a case on a single prong of the qualified immunity inquiry). Therefore, the Court declines to determine whether Plaintiffs have alleged a constitutional violation. Drs. Hernandez and Ercole are entitled to qualified immunity because in October 2019, there was no clearly established law that would have provided them with fair warning that their actions would violate federal constitutional law.

At the time of Drs. Hernandez and Ercole's purported seizure, it was well established that when children are seized from their home for the purpose of taking them into state custody, the state must have a court order, parental consent, or show that exigent circumstances exist. *Gates v. Tex. Dep't of Protective and Regul. Svcs.*, 537 F.3d 404, 429 (5th Cir. 2008); *see also Wernecke v. Garcia*, 591 F.3d 386, 397 (5th Cir. 2009). This case, however, is unusual in at least three significant respects. First, A.L.P. was in the physical custody of University Hospital and her treating physicians prior to her purported seizure. Second, doctors—not social workers or law enforcement—allegedly seized A.L.P. And third, Plaintiffs fail to clearly allege whether A.L.P. was purportedly seized solely because of the pending CPS investigation.[2] Plaintiffs have not presented, and the Court has not found, any Fifth Circuit case that squarely addresses whether doctors exercising their discretion to delay the discharge of a minor patient due, in part, to a pending child abuse investigation gives rise to an unconstitutional seizure under the Fourth

---

[2] While the second amended complaint alleges that A.L.P. was cleared to be discharged on October 26, 2019, by Plaintiffs' own admission, the author of the "chart notes" is unknown. Drs. Ercole and Hernandez's October 26 notes state that A.L.P. "should remain at UHS pending CPS dispo, and additional observation given her waxing and waning clinical presentation . . . ." Exh. H at 1. Though CPS had been contacted at that time, Drs. Hernandez and Ercole believed further observation was necessary; several test results were still pending; and they were trying to reach the immunologist on call to discuss IVIG treatment. *See id.*; Exh. K at 1. Lastly, Dr. Hernandez's October 28, 2019 notes state: "CPS has been reached, and have determined that [A.L.P.] may be discharged with her parents *once she is medically ready*." *Id.* at 15 (emphasis added).

Amendment. *See Romero*, 937 F.3d at 522–24; *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019); *Wernecke*, 591 F.3d at 397–400; *Gates*, 537 F.3d at 427–36; *Wooley*, 211 F.3d at 924–25 (all analyzing whether social workers or law enforcement were entitled to qualified immunity for warrantless seizure of children from their homes for child abuse investigations). Given these unique circumstances, the Court cannot conclude that Drs. Ercole and Hernandez were on notice that their actions may constitute a violation of the Fourth Amendment; therefore, both are entitled to qualified immunity as to Plaintiffs' Fourth Amendment claim, and the claim must be dismissed.

### v. Plaintiffs cannot assert a claim under § 1983 for malicious prosecution.

Plaintiffs further assert that Defendants' actions "constituted malicious prosecution in that Defendants, as state actors acting under color of law, maliciously initiated adverse legal processes against Plaintiffs without probable cause." ECF No. 29 at 24. Plaintiffs affirmatively submit that they bring their malicious prosecution claim under § 1983 rather than as a state tort action. ECF No. 27 at 10–11. However, "[t]here is no constitutional right to be free from malicious prosecution." *Morgan v. Chapman*, 969 F.3d 238, 246 (5th Cir. 2020). Thus, Plaintiffs' malicious prosecution claim against Drs. Hernandez and Mangold is barred by immunity and must be dismissed.[3]

### vi. Plaintiffs' claim for IIED fails because it is predicated on the same facts as their constitutional claims.

Plaintiffs allege that Defendants intentionally subjected Plaintiffs to emotional distress. ECF No. 29 at 22–23. In Texas, IIED is a "gap-filler" tort, "judicially created for the limited

---

[3]     To the extent that a defendant's actions that correspond to the tort of malicious prosecution result in an unreasonable search or seizure, such a claim may be asserted pursuant to § 1983 as violations of the Fourth Amendment. *See Morgan*, 969 F.3d at 245–46. The Court, though, has already concluded that Drs. Ercole and Hernandez are entitled to qualified immunity as to Plaintiffs' Fourth Amendment claim.

purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). Recovery for IIED is "'to supplement existing forms of recovery by providing a cause of action for egregious conduct' that might otherwise go unremedied" and "should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Id.* (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). Thus, where the same facts form the basis of the plaintiff's IIED and statutory claim, recovery for IIED is precluded. *Id.*; *see also Holguin v. Lopez*, 584 F. Supp. 2d 921, 928 (W.D. Tex. 2008) (dismissing plaintiff's IIED claim because it was based on the same operative facts as plaintiff's constitutional claims); *Johnson v. Blue Cross/Blue Shield of Tex.*, 375 F. Supp. 2d 545, 549 (N.D. Tex. 2005) (dismissing plaintiff's IIED claim because the facts underlying the claim were identical to her Title VII claim).

Plaintiffs' second amended complaint sets forth the same operative facts for their IIED claim as their constitutional claims. Plaintiffs assert that they suffered "severe emotional distress" because Defendants breached their duty to act "in full compliance with federal law," and "intentionally used the threat of police action and report to CPS to place fear in [Elizabeth] and A.L.P. to remain at the hospital." ECF No. 29 at 23. These allegations form the basis of Plaintiffs' constitutional claims, discussed *supra*. Therefore, Plaintiffs' IIED claim fails, and the Court must dismiss this claim.

## IV.    Leave to Amend

As the Court has concluded that all of Plaintiffs' claims set forth in their second amended complaint should be dismissed, it now turns to whether Plaintiffs ought to be given leave to file a

third amended complaint. Denying leave to amend is appropriate where amendment would be futile. *Anokwuru v. City of Houston*, 990 F.3d 956, 966 (5th Cir. 2021). As UTHSC is entitled to Eleventh Amendment immunity, and Plaintiffs offer no contention that further amendment could overcome immunity, the Court finds that amending the Complaint further to include claims against UTHSC would be futile.

As to Plaintiffs' claims against Drs. Hernandez, Ercole, and Mangold, Plaintiffs, as a matter of law, cannot assert malicious prosecution or IIED claims. Additionally, based on the facts alleged and the medical records attached to the second amended complaint, Drs. Ercole and Hernandez are entitled to qualified immunity. Finally, Plaintiffs have had multiple opportunities to allege facts concerning Dr. Mangold's acts or omissions giving rise to their claims, as well as facts concerning H.S. and P.S.'s injuries, and have failed to do so. Thus, the Court finds that further amendment would be futile.

## CONCLUSION

For these reasons, Defendants' motion to strike (ECF No. 30) is **DENIED**. Defendant UTHSC's motion to dismiss for lack of subject matter jurisdiction (ECF No. 25) is **GRANTED**. Plaintiffs' claims against Defendant UTHSC and Defendants Drs. Ercole, Hernandez, and Mangold in their official capacities are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs H.S. and P.S.'s claims against Defendants Drs. Ercole, Hernandez, and Mangold in their individual capacities are **DISMISSED WITHOUT PREJUDICE**.

Defendant Drs. Ercole, Hernandez, and Mangold's motion to dismiss for failure to state a claim (ECF No. 23) is **GRANTED**. Plaintiffs Elizabeth Schultz, Michael Schultz, and A.L.P.'s claims against Defendants Drs. Ercole, Hernandez, and Mangold in their individual capacities are **DISMISSED WITH PREJUDICE**.

Defendants' motions to stay discovery (ECF Nos. 31, 32) are **DISMISSED AS MOOT**.

The hearing set for March 29, 2022, is hereby **VACATED**. The Clerk is **DIRECTED** to enter final judgment and to **CLOSE** this case.

It is so **ORDERED**.

**SIGNED** this 22nd day of March, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE